### HENNICK v HENNICK et

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3213. Decided July 24, 1940.

Carrington T. Marshall, Columbus, and Bert Wollman; Columbus, for plaintiff-appellee.

Franklin Rubrecht, Columbus, for defendants-appellants.

### OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendants' appeal from the Court of Common Pleas of Franklin County, Ohio.

The action was one in equity and the notice of appeal was on questions of law and fact, but by reason of the fact that proper appeal bond was not given our court determined on a previous date that the cause could not be considered de novo but that we would consider the case as an error proceeding and grant time for preparation and allowance of bill of exceptions.

These requisites have been complied with, and we now determine on the assigned errors.

The following brief summary of facts will render understandable the nature of the controversy:

Charles Hennick, Senior, died testate on September 29, 1934, leaving the plaintiff as his widow and three sons and two daughters as his only children, said widow and children being his sole devisees and legatees under his will. His sickness had been extended and in the last months preceding his death he required a great amount of care and

attention, which, in the main, was given by the widow.

Following the death of the testator, the widow was fatigued in body and mind and extremely nervous. Her familiarty with business affairs was limited.

Testator's property, aside from household goods and $200.00 in a financial institution, consisted almost exclusively of three or four pieces of real estate, all of which were covered by mortgage or mortgages in the sum of approximately $5500.00. At the time of the death of testator there existed generally a slump in real estate values and as a result the equities in the real estate were questionable. Testator carried a life insurance policy in the sum of $5000.00, with widow as beneficiary.

The will directed that all just debts, including the expenses of last illness and burial should be paid out of the proceeds of the life insurance policy.

The widow was given the remainder of the life insurance together with all household goods, furniture and furnishings and all personal effects. The homestead in which they lived was also given to the widow during her life. Upon the death of the widow the homestead was to be divided equally among the five children. Subject to certain trust provisions, which were to continue until December, 1935, the remainder of the property was divided equally among the children.

Three of the legatees were stepchildren of the plaintiff, and the other two were her own children. The said children were very young at the time of the marriage between herself and Mr. Charles Hennick, Sr., and the said children grew up in the home and a very friendly family relationship existed.

Attorney Lowry F. Sater was named executor in the will.

Prior to the probate of the will, but after some of the children at least knew its contents, there was a family conference. The plaintiff, Mrs. Hennick, was not entirely satisfied with the provisions of the will and it was recognized that she would have a right to reject its provisions and take under the law. The children proceeded to formulate a plan through which the mother would receive a larger amount than she would receive under the will. The son and stepson of the plaintiff, Mrs. Hennick, took it upon themselves to consult a lawyer and thereby obtain information as to the rights of the widow under the will and the law. At a family meeting, at which the widow was present, a plan was finally adopted through which the widow's interest would be fixed by contract and to be in lieu of what she would receive under the law and the will. The two children who had consulted the attorney more or less led the discussion. The widow took very little part in it. She stated that she relied upon the children to do the right thing by her. During the conference, the widow was asked what piece of real estate she would take and she identified the tract that she wanted. On the following day the two sons went to the attorney whom they had consulted, gave him the data through which a contract was drawn up in line with the understanding of the previous evening, and was then signed on the same day by the widow and the five children.

At or about the same time a quitclaim deed was executed by the five children and their respective husbands and wives, conveying a life interest in the house and lot which the contract provided was to be granted to the widow. On the same day the will was probated and, upon request of the heirs, Attorney Sater declined the appointment as executor and the two sons, Lee W. Hennick and Charles Hennick, were appointed administrators with the will annexed.

While the contract between the widow and the five children provided that the provisions therein should be in lieu of widow's right to year's allowance and 20% of the assets of the estate not to exceed $2500.00, yet in preparing the inventory the appraisers made allowance of $1000.00 for year's allowance and also the $2500.00 allowable to her. However, neither of these allowances was paid or intended to be paid. Presumably the contract would be or was used in the voucher against

these allowances. The contract further provided that the widow should pay all debts against the estate and under the broad language of the contract this would include the mortgage indebtedness, although at least one of the children states that this was not the intention when the contract was drafted.

Using the inventory and appraisement as a basis for values, it develops that the provision made for the widow under the contract was substantially less than she would have received had the provisions of the will been followed, and even greater variance had the widow rejected the will and taken under the law.

On May 19, 1937, the widow filed action seeking to set aside the contract and be restored to all rights inuring to her had the contract not been executed.

In her petition she alleges that she is ready to render an account for the proceeds of the rents and profits received by her from the real estate conveyed under the contract. The petition raises the question as to whether or not the real estate was ever properly deeded to her, but she desires the same returned by whatever method the court may find proper.

Answer was filed by the three stepchildren. No pleading was filed by either of Mrs. Hennick's two children. The answer admits many of the allegations of the petition, but specifically denies any wrong doing warranting the granting of relief to plaintiff. It also sets out the claim of estoppel.

Plaintiff's reply puts in issue all new matter.

It was the finding of the trial court that plaintiff had established the allegations of her petition and judgment was entered in her favor, as per the prayer of her petition.

Appellants, in their assignment of errors, set out seven separate specifications. No. 6 is withdrawn. The remainder may be encompassed in the single claim that the finding and judgment of the court are against the evidence and contrary to law.

This at once requires a very full and careful reading of all the evidence as contained in the transcript. This we have done, and some parts of it we have examined two or three times.

We start with the understanding that the evidence adequately supports the claim and theory of the existence of a confidential relation between the widow and her children. The trial court found, and we also find, that the widow relied exclusively upon the suggested plan formulated entirely by some or all of the children. The trial court also concluded, and we think correctly so, that none of the children had any avowed intention of doing an injustice to the mother.

The discussion in her presence as to her rights under the will, under the law and under the contract was, as she testified, "all Greek to her." This was an entirely new field and outside of her previous experiences. It is very doubtful if the children understood fully what was being done. The dominant desire of all was to save the real estate from being sold on a depressed market.

Furthermore, we approach the determination of this case with an appreciation of the legal principle that family settlements are favored, and, further, that signed contracts are presumably understood. However, by reason of the confidential relation existing, another legal principle takes precedence over all others, and that is that equity will inquire into the fairness and justice of such contracts. This element is generally spoken of as constructive fraud.

Untruths or bad intentions are not necessary elements of constructive fraud. Courts of equity will grant relief in the absence of bad intention or untruth where a confidential or fiduciary relationship exists and where the parties complaining did not have full knowledge of the transaction, especially where the circumstances are such, considering the relationship of the parties and the reliance of the party complaining upon others who are parties to the transaction, suggests to the court that the agreement is inequitable or unfair, or that the party

complaining was induced because of the combination of such circumstances to do otherwise than he would have done dealing at arm's length with full information and knowledge.

We have been favored with the very able written opinion of the trial court, and finding ourselves as ▮▮▮▮▮▮ ▮ we do, in full accord with its opinion in all its reasoning and verbiage, we adopt it as our own.

No useful purpose could be served in restating the same principles with language of our own choosing.

The finding and judgment of the trial court will be affirmed and costs adjudged against the appellants.

Entry may be drawn accordingly.

HORNBECK, PJ. & GEIGER, J., concur.